**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Andrew Shackett,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>CraftWorks Restaurants & Breweries Group, Inc.,<br><br>　　　　　Defendant. | Civil No.: 0:14-cv-04895-SRN-TNL<br><br><br>**EXHIBIT B TO JOINT STIPULATION TO FILE SECOND AMENDED COMPLAINT AND JURY DEMAND (DOC. NO. 6)** |

| | |
|---|---|
| **Exhibit B** | Proposed Second Amended Complaint and Jury Demand - Redlined Version |

~~STATE OF MINNESOTA~~ **UNITED STATES DISTRICT COURT**

~~COUNTY OF RAMSEY~~ ~~SECOND JUDICIAL DISTRICT~~ **DISTRICT OF MINNESOTA**

Court File No.: ~~62~~14-cv-~~14-7273~~04895-SRN-TNL

Case Type: Employment Discrimination

Andrew Shackett,

    Plaintiff,

v.                                          **SECOND AMENDED COMPLAINT AND JURY DEMAND**

CraftWorks Restaurants & Breweries Group, Inc.,

    Defendant.

Andrew Shackett ("Plaintiff"), for his Complaint against CraftWorks Restaurants & Breweries Group, Inc. ("Defendant"), states and alleges as follows:

## PARTIES

1. Plaintiff is a resident of the City of Minneapolis, County of Hennepin, State of Minnesota.

2. At all relevant times, Plaintiff was employed by Defendant. Defendant is a business with a location in the City of Roseville, County of Ramsey, State of Minnesota.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked as violations occurred in the State of Minnesota and involve federal law. Pursuant to section 107 of the Family Medical Leave Act, an employee may file a claim in state or federal court.

4. Venue is appropriate because Defendant transacts a substantial amount of business in the State of Minnesota and a substantial amount of the facts giving rise to this action occurred within the borders of the County of Ramsey, State of Minnesota.

## FACTS

5. Plaintiff was employed by Defendant for nineteen months until his termination on July 27, 2014, as the Bar Manager at Old Chicago located in Roseville, Minnesota.

6. Plaintiff had no performance or disciplinary issues in the nineteen months he worked for Defendant.

7. In February 2014, Plaintiff and his wife learned that they were selected to be the adoptive parents of a boy due to be born in June, 2014. Within days, Plaintiff notified Luke Dunham, the Area Director at Defendant, and Tony Bullock, the General Manager at Defendant, that he would exercise his rights under the FMLA and would be gone for at least a month when his son was born. Plaintiff was told to remind them again in April.

8. As part of the adoption process, Plaintiff was to fly down to Atlanta, Georgia to participate in the birth of his adopted son. The law requires adoptive parents to remain in the state where the baby is born until the court approves their departure. Once they received court approval, Plaintiff and his wife planned to bring their son, Alex, home to Minnesota.

9. On April 17, Plaintiff provided Defendant with written notice that he intended to exercise his rights under the FMLA when his son was born.

10. On May 14, Plaintiff submitted his FMLA paperwork. Plaintiff and his wife received a call on May 16 and were told the birth mother was in labor. Plaintiff called and sent text messages to both Bullock and Dunham to inform them that he was leaving to be present at the

birth of his son. The only day of work that Plaintiff missed due to this series of events was May 18. Plaintiff's son was born on May 19.

11. On May 26, Defendant posted a new work schedule. According to the schedule, Steve Vargas, who was previously the Server Manager, was now listed as the Bar Manager and Plaintiff was listed as the Server Manager.

12. Plaintiff texted Bullock and asked him why Vargas was taking over as the Bar Manager. Bullock said that they would talk about it when Plaintiff returned. Plaintiff returned to work on June 23. In a manager's meeting that day, Bullock informed the managers that Vargas was taking over as the Bar Manager and Plaintiff would be demoted to the Server Manager. Plaintiff asked Bullock to reconsider but was told that the decision had already been made by Dunham.

13. On June 24, Plaintiff called Dunham and reported that Old Chicago could not take his position away while he is on FMLA leave. Dunham responded that the decision would stand because Vargas was "getting the hang" of being the Bar Manager. That same day, Plaintiff wrote a letter to Human Resources reporting that he was being retaliated against for exercising his rights under the FMLA. By noon the next day, June 25, Dunham called Plaintiff and told him he would be reinstated as Bar Manager.

14. On July 22, Plaintiff was working as the Bar Manager and was responsible for closing the restaurant. Typically Old Chicago closes at 1:30 a.m., but managers sometimes lock the doors a bit early when the restaurant is completely empty. Management was aware of this practice and had not previously disciplined anyone for it. On that day, the restaurant was completely empty so Plaintiff closed the restaurant shortly after 1:00 a.m. Two customers came

to the door together after it had been locked. Travis Van Dell, who is a Supervisor, told the customers that Plaintiff locked the doors early.

15. Around 10:30 p.m. that same night, Van Dell had suggested that Plaintiff leave early and let him close the restaurant because Plaintiff mentioned he wasn't feeling very well that evening. Plaintiff agreed because Van Dell suggested it and Plaintiff knew that Van Dell had been allowed to close the restaurant previously.

16. The customers that attempted to enter the restaurant after the doors had been locked complained. In response to this complaint, on July 23, Dunham emailed Plaintiff and asked what happened. Plaintiff replied honestly – he closed the doors because he believed it was a good business decision and he wasn't feeling well so he accepted Van Dell's offer to close the restaurant for him.

17. On July 27, Plaintiff went to work and Dunham and Bullock were both present in the restaurant. Dunham and Bullock asked Plaintiff about closing the restaurant early and allowing Van Dell to close. Plaintiff again replied honestly and he was terminated.

18. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered from distress, humiliation and embarrassment, loss of reputation, loss of enjoyment in life, loss of wages and benefits, and has incurred attorneys' fees and expenses and other serious damage.

## CLAIMS:

### COUNT ONE

### VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff re-alleges each and every paragraph of this Complaint.

19. Defendant engaged in unlawful employment practices involving Plaintiff in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* These practices include,

4

but are not limited to: altering the terms and conditions of Plaintiff's employment after his FMLA leave requests and terminating Plaintiff's employment because of his FMLA leave.

20.     Plaintiff was retaliated against in the terms, conditions, and privileges of his employment after he exercised his rights under the FMLA and informed Defendant of his need for FMLA leave.

21.     The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting his status as an employee because he exercised his rights under the FMLA.

22.     The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to the laws, which protect Plaintiff.

23.     As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT TWO

## VIOLATIONS OF MINNESOTA STATUTE § 181.92

Plaintiff re-alleges each and every paragraph of this Complaint.

24.     Defendant engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Statute § 181.92 *et seq*.  These practices include, but are not limited to: penalizing Plaintiff by altering the terms and conditions of his employment during and after his leave to adopt a child and terminating Plaintiff's employment because of his leave and/or the adoption of a child.

25. Plaintiff was penalized in the terms, conditions, and privileges of his employment after he exercised his rights.

26. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting his status as an employee because he exercised his rights under Minn. Stat. § 181.92.

27. The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to the laws, which protect Plaintiff.

28. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of Defendant complained of herein be adjudged, decreed and declared to be in violation of the rights secured to Plaintiff by federal law.

b. That Defendant be required to make Plaintiff whole for its adverse, retaliatory and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c. That Plaintiff be awarded front pay and the monetary value of any employment benefits he would have been entitled to as an employee of Defendant.

d. That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

  e. That Plaintiff be awarded compensatory damages in an amount to be determined at trial.

  f. That Plaintiff be awarded liquidated damages as permitted by the FMLA.

  g. That the Court award Plaintiff his attorneys' fees, costs and disbursements pursuant statute.

  h. That the Court grant such other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

Dated: December 16, 2014    HALUNEN & ASSOCIATES

               _____
               Clayton D. Halunen, #219721
               Kaarin S. Nelson, #386919
               V. Joshua Socks, #395675
               1650 IDS Center
               80 South Eighth Street
               Minneapolis, MN 55402
               Telephone: (612) 605-4098
               Facsimile: (612) 605-4099

               *ATTORNEYS FOR PLAINTIFF*

~~**ACKNOWLEDGMENT**~~

~~The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.~~

~~_____~~
~~Dated:_____  _____~~
                    ~~Kaarin S. Nelson~~